UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

              - against -                                 **OPINION & ORDER**

ALLEN BLAKE,                                     10 CR 349 (RPP)

                        Defendant.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.,**

   **I. Introduction**

On June 15, 2010, following a three-day trial by jury, Defendant Allen Blake ("Mr. Blake" or "Defendant") was convicted of mail fraud, in violation of 18 U.S.C. § 1341, for submitting a false life insurance claim. On July 5, 2010, Mr. Blake moved this Court for a new trial under Federal Rule of Criminal Procedure 33. The Court denied the motion by Order and Opinion dated August 9, 2010. Approximately eight months after his conviction, on February 7, 2011, Mr. Blake submitted a second motion for a new trial pursuant to Rule 33. The Court returned this submission to the Defendant because it lacked affirmation of service on the Government. On February 24, 2011, Mr. Blake filed the instant *pro se* motion for a new trial also pursuant to Rule 33. With this motion, Mr. Blake submitted an affirmation dating service of the motion on the Government on January 26, 2011. Following this filing, Mr. Blake retained an attorney, Damond Carter ("Mr. Carter"), to represent him in this matter. On April 4, 2011, prior to the Government's response to Mr. Blake's motion for a new trial, Mr. Blake, together with counsel, filed a motion for a default judgment on his motion for a new trial as a result of the Government's failure to reply within fourteen days of service. The Government submitted its opposition papers to Defendant's motion for a new trial one week later on April 11, 2011. While

the Government did not file a separate memorandum in opposition to Defendant's motion for default judgment, the Government rejected this motion in a footnote in its opposition papers to Defendant's motion for a new trial.

For the reasons that follow, Mr. Blake's motions for a new trial and for default judgment are denied.

**II. Factual Background**

From 2006 to November 20, 2009, Mr. Blake, a Correctional Officer employed by the City of New York Department of Corrections, was a board member of the Correction Officer's Benevolent Association ("COBA"). (Defs.'s Joint Mot. in Lim. at 2.) As part of his union contract with COBA, Mr. Blake was entitled to death benefits with Prudential Life Insurance Company of America ("Prudential") in the event of the death of his lawful spouse. (Trial Transcript ("Tr.") at 307, 332.) In May 2008, Mr. Blake filed for divorce from his estranged wife, Pearline Blake ("Ms. Blake"). (Gov. Ex.7.) On June 23, 2009, the divorce was granted. (Id.) Three months later, on September 29, 2009, Ms. Blake died. (Tr. at 332.)

On October 23, 2009, following the death of Ms. Blake, Mr. Blake submitted a claim to Prudential as the beneficiary of Ms. Blake's death benefits, listing his relationship to the deceased as "husband." (Gov. Ex. 3.) On or about November 17, 2009, Mr. Blake obtained $10,000 on the policy from Prudential. (Tr. at 328-29.) Shortly thereafter, other COBA board members learned about Mr. Blake's divorce and confronted him about his fraudulent insurance claim. (Id. at 332-35, 591-94.) The confrontation ended in Mr. Blake's resignation from COBA. (Id. at 594.) On or around November 25, 2009, Mr. Blake returned to Prudential the $10,000 he received on the policy. (Tr. at 410-11, 423-27.) On April 20, 2010, Mr. Blake was indicted for mail fraud in violation of 18 U.S.C. §1341 and §1342, for devising a scheme to use the United

States Postal Service to defraud an insurance company of life insurance benefits to which he was not entitled.  (Indictment 4/20/10.)

The critical issue at trial was whether, prior to submitting his application for death benefits, Mr. Blake knew that his divorce had already been finalized.  (See Op. and Order 9/9/10 at 2.)  Mr. Blake claimed that he was unaware of this fact, and consequently, that he was unaware that he was no longer eligible to receive insurance benefits resulting from Ms. Blake's death.  (Def.'s Mot. New Trial 2/24/11 at 5.)  The Government disputed these contentions by presenting documentary evidence and witness testimony supporting the view that Mr. Blake intentionally submitted a false insurance claim.

Evidence presented by the Government included: 1) a copy of Mr. Blake's divorce judgment signed by the county clerk on June 23, 2009 and filed with the New York County Clerk's Office on July 7, 2009, (Gov. Ex. 4); 2) COBA mail logs registering receipt of a letter from Koehler & Isaacs ("K&I"), the law firm that handled Mr. Blake's divorce, to Mr. Blake at his COBA office on July 23, 2009, (Gov. Ex. 9); and 3) an opened envelope bearing an adhesive barcode consistent with processing through United States Postal Service, and a letter addressed to Mr. Blake from K&I paralegal Claudia Tejada ("Ms. Tejada"), dated July 21, 2009, confirming Mr. Blake's divorce finalization.  (Gov. Ex. 6.)

Further, Ms. Tejada testified at trial that she told Mr. Blake in a phone conversation on July 13, 2009 that his divorce had been signed.  (Tr. at 508.)  She also testified that on July 21, 2009, she mailed to Mr. Blake, via United States Postal Service, a letter confirming his divorce and a copy of the divorce judgment.  (Id. at 510-11, 519.)  Elias Husamudeen ("Mr. Husamudeen"), the First-Vice President of COBA, testified that in February 2010, as he was cleaning Mr. Blake's former office, he found the opened envelope and enclosed letter addressed

to Mr. Blake, dated July 21, 2009, confirming Mr. Blake's divorce finalization.  (Id. at 538.) Joseph Bracco ("Mr. Bracco"), a member of the COBA Executive Board, testified that Mr. Blake told him that "it was messed up that he couldn't collect on the life insurance policy because . . . he had just recently became [sic] divorced in July" and that Mr. Blake asked him whether "there was a grace period" on the policy, to which Mr. Bracco told him there was not.  (Id. at 438.) Thomas Farrell ("Mr. Farrell"), a COBA Board Member, testified that Mr. Blake told him in September 2009 that his "ex-wife died" and that "[if] the bitch or broad would have died a couple of months earlier, [he] would have gotten the money."  (Id. at 654.)  Finally, Norman Seabrook ("Mr. Seabrook"), President of COBA, testified that when he confronted Mr. Blake at a COBA emergency meeting about his filing for life insurance benefits resulting from Ms. Blake's death, Mr. Blake responded "I fucked up."  (Id. at 593.)  At that meeting, Mr. Seabrook demanded and received Mr. Blake's resignation from COBA.  (Id. at 93-94.)

     On June 15, 2010, following three days of trial, a jury returned a guilty verdict on Mr. Blake's charge of mail fraud in violation of 18 U.S.C. §1341.  (Id. at 873-74; see J. of 11/1/10.) On July 5, 2010, Mr. Blake filed his first Rule 33 motion for a new trial through his trial counsel, Anthony Ricco ("trial counsel"), on the grounds that (1) the testimony of Ms. Tejada was "patently incredible and defie[d] physical realty [sic]"; and (2) the prosecution failed to disclose the source of an exhibit in violation of Mr. Blake's due process rights.  (Memo. Law. in Supp. Def.'s Mot. New Trial 7/5/10.)  On August 9, 2010, the Court denied the motion on the ground that there was "substantial evidence corroborating Ms. Tejada's testimony" and that "source information appeared on the document itself undermin[ing] [Mr. Blake's] claim that this information was 'suppressed' by the Government." (Op. and Order 9/9/10 at 8-10.)  On

November 1, 2010, Mr. Blake was sentenced to three years of probation with three months of home confinement.  (See J. of 11/1/10.)

On February 24, 2011, Mr. Blake filed the instant motion for a new trial.  (Def.'s Mot. 2/24/11.)  Mr. Blake argues that he should receive a new trial because 1) he received ineffective assistance of counsel because trial counsel did not present material evidence that Mr. Blake believes would have impeached two of the Government's key witnesses, and 2) he learned after his conviction that i) federal mail fraud convictions are limited to bribery and kickbacks, which Mr. Blake believes do not apply in his case, and ii) New York law does not criminalize life insurance fraud, such that federalism concerns should preclude the federal Government from criminalizing an act that New York State does not recognize as criminal.  (Id. at 1-3.)

On April 4, 2011, Mr. Blake also filed a motion for a default judgment as a result of the Government's delay in responding to the motion for a new trial.  (Def.'s Mot. Default J. 4/4/11.)  One week later, on April 11, 2011, the Government filed its opposition papers to Mr. Blake's motion for a new trial.  (Pl.'s Mem. Opp'n Def.'s Mot. New Trial 4/11/11.)  In its Memo, the Government did not provide reasons for its delayed response.  (Id.)  On May 6, 2011, Mr. Blake submitted his reply memorandum in support of his motion for a new trial.  (Def.'s Reply Mem. in Supp. Mot. New Trial 5/6/11.)

### III. Motion for a New Trial

#### A. *Ineffective Assistance of Counsel Claims*

Mr. Blake first argues that he is entitled to a new trial because he received ineffective assistance of counsel in violation of his Sixth Amendment right to counsel because trial counsel failed to present witness testimony that Mr. Blake believes would have impeached two key Government witnesses.  Specifically, Mr. Blake states that several months after his conviction,

he learned that prior to trial, trial counsel interviewed Twana Elliott ("Ms. Elliott"), the former comptroller for COBA, who informed trial counsel that during her time at COBA, all mail between COBA and K&I was exchanged solely via office messenger.  (Def.'s Mot. 2/24/11 at 7, 13; Twana Elliott's Aff. 1/20/11 ("Elliott's Aff.") ¶ 5.)  Mr. Blake believes this information belies Ms. Tejada's testimony at trial that she mailed Mr. Blake confirmation of his divorce to his COBA office via United States Postal Mail on July 21, 2009.  (Def.'s Mot. 2/24/11 at 13-14.)  Trial counsel did not call Ms. Elliott as a witness at trial.  Additionally, Mr. Blake believes that the statement in Ms. Elliott's affidavit that acting Board Member, Benny Boscio ("Mr. Boscio"), took occupancy of Mr. Blake's office in December 2009 suggests that it was impossible for Mr. Husamudeen to have found the letter confirming Mr. Blake's divorce in February 2010 as he testified.  (Def.'s Mot. 2/24/11 at 2-3; Elliott's Aff. ¶ 5.)

Second, Mr. Blake claims that he learned from private investigator, Joseph Archibald ("Mr. Archibald") that another former COBA employee, Yvrose Philippe ("Ms. Philippe"), told him in an undercover phone conversation that all paperwork in Mr. Blake's office had been shredded shortly after Mr. Blake resigned.  (Def.'s Mot. 2/24/11 at 14.)  Mr. Blake believes that this information refutes the testimony of Mr. Husamudeen, who claimed to have found the divorce confirmation letter in Mr. Blake's office in February 2010, several months after Mr. Blake resigned.  (Tr. at 537-38.)  Mr. Blake argues that trial counsel's knowledge of this information, coupled with his failure to present it at trial, rises to a violation of his right to effective counsel under the Sixth Amendment. (Def.'s Mot. 2/24/11 at 13-14.)

### i. Legal Standard

Federal Rule of Criminal Procedure 33 provides that a court may grant a new trial if "the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Rule 33 offers two basic grounds on

which a defendant can move for a new trial— 1) newly discovered evidence and 2) "any reason other than newly discovered evidence." Fed. R. Crim. P. 33.  A motion for a new trial on the grounds of newly discovered evidence "must be filed within 3 years after the verdict." Fed. R. Crim. P. 33(b)(1).  A motion based on "any reason other than newly discovered evidence must be filed within 14 days after the verdict." Fed. R. Crim. P. 33(b)(2).

        ii.  Discussion

In this Circuit, claims for ineffective assistance of counsel are not considered "new evidence" within the meaning of Fed. R. Crim. P. 33(b)(1), and as such, fall into the Fed. R. Crim. P. 33(b)(2) catchall. See Strickland v. Washington, 466 U.S. 668-94 (1984); see also United States v. Castillo, 14 F.3d 802, 805 (2d Cir. 1994) (holding that "ineffective assistance claims do not present new evidence within the meaning of Rule 33.").

Here, Mr. Blake is precluded from presenting a claim of ineffective assistance of counsel because his claim is not based on "newly discovered evidence"[1] and was not filed within the 14-day period allowed by Rule 33 for a motion grounded on "any other reason."  See Fed. R. Crim. P. 33(b).  Mr. Blake filed his motion approximately eight months after his conviction, and therefore, is procedurally barred from raising a claim of ineffective assistance of counsel at this time.

    **B.  *Skilling* Limitation and New York State Law**

Mr. Blake puts forth a second ground in support of his motion for a new trial.  Specifically, Mr. Blake asserts that after his conviction, he learned from Mr. Carter, a lawyer who represented him in a related civil matter and whom Mr. Blake retained after filing the Rule

---

[1] *See* United States v. Dukes, 727 F.2d 34 (2d Cir. 1984) (where Court found defendant's claim that he received ineffective assistance of counsel because of his attorney's allegedly poor tactical decisions was not newly discovered evidence under Rule 33).

33 motion, that he should not have been convicted of mail fraud because neither state nor federal law criminalizes his actions.  (Def.'s Mot. 2/24/11 at 8-10.)  Mr. Blake contends that Skilling v. United States, 130 S. Ct. 2896 (2010), which was decided by the Supreme Court about two weeks after Mr. Blake was found guilty at trial, limits federal mail fraud under 18 U.S.C. §1341 to "only schemes or artifices to defraud that involve bribery or kickbacks."  (Def.'s Mot. 2/24/11 at 8.)  Since his actions did not involve bribery or kickbacks, Mr. Blake argues that the statute is not applicable. Id.  Additionally, Mr. Blake states that according to People v. Aksoy, 84 N.Y.2d 912 (1994), in order for New York State to convict a defendant of life insurance fraud, the defendant's claim "must be fraudulent both at the time of the initial application for insurance coverage and at the time of the application for the benefits of that application for insurance coverage."  (Def.'s Mot. 2/24/11 at 9.)  Since Mr. Blake was married to Ms. Blake at the time he applied for insurance coverage, Mr. Blake believes it is "legally impossible for [him] to have committed the crime of insurance fraud under the laws of New York." Id. at 10.  Furthermore, Mr. Blake argues that federalism concerns should preclude the Government from "criminaliz[ing] a local criminal act, irrespective of the fact that local laws specifically deem such act not to be criminal."  Id.  Mr. Blake contends that trial counsel's failure to present what he believes is a limitation on mail fraud as set forth in Skilling, or to request a jury instruction that required the Government to prove that Mr. Blake violated New York's insurance fraud laws, amounts to a violation of his Sixth Amendment right to counsel.  (Id. at 11.)

      i.  Legal Standard

New legal arguments are not considered newly discovered evidence under Rule 33.  See, e.g., United States v. Allamby, 205 F.3d 1325 (2d Cir. 2000) and United State v. Walker, 182 F.3d 902 (2d Cir. 1999).  In addition, "[a] change in legal standard . . . [does] not qualify as

'newly discovered evidence.'" United States v. Shelton, 459 F.2d 1005, 1007 (9th Cir. 1972); see United States v. Danks, 357 F.Supp. 193 (D.Haw. 1973); see also Blair v. United States, Nos. 00-cr-10033, 09-cv-1351, 2010 WL 118530 (C.D.Ill. Jan 8, 2010).  Therefore, according to Rule 33, such claims must be brought within fourteen days after the verdict.

      ii. Discussion

Mr. Blake's claim that neither federal nor state law criminalizes his actions is a legal argument, and thus, is not considered new evidence.  See Allamby, 205 F.3d 1325.  Moreover, a subsequent court decision in another case does not constitute newly discovered evidence.  See Danks, 357 F.Supp. 193.  Therefore, Mr. Blake's contention that he should receive a new trial because of his belief that the Supreme Court's opinion in Skilling, which was issued nine days after Mr. Blake's conviction, limits mail fraud to "bribery and kickbacks" is also not considered new evidence.  Since a motion based on "any reason other than newly discovered evidence must be filed within 14 days after the verdict," Mr. Blake, having filed his motion approximately eight months after his conviction, is also procedurally barred from asserting that he should receive a new trial because neither state nor federal law criminalizes his actions.[2]  Fed. R. Crim. P. 33(b)(2).

Thus, Mr. Blake's motion for a new trial on the basis of ineffective assistance of counsel and the Supreme Court's opinion in Skilling is denied.

**IV. Defendant's Request for a Default Judgment**

Mr. Blake's second motion, a motion for a default judgment against the Government on his Rule 33 motion, stems from the Government's response to Mr. Blake's motion approximately

---

[2] Because Mr. Blake is procedurally barred from asserting a claim that he should receive a new trial based on new legal precedent, the Court does not address the merits of his claim that Skilling limits mail fraud to bribery and kickbacks.

one month after the fourteen-day response period permitted by Local Criminal Rule 12(b) for the United States District Court for the Southern District of New York. Local Crim. R. 12.1(b). In support of Mr. Blake's Motion for a Default Judgment, Mr. Blake's attorney, Mr. Carter, offers New York v. Green, 420 F.3d 99 (2d Cir. 2005), which he states stands for the proposition that "when a party has fail[ed] to defend, the movant may bring that fact to the court's attention, and request that the court decide in the movant's favor." (Declaration of Damond Carter ("Carter Decl.") 4/4/11 at ¶ 15.)

            ii. Discussion

Given that Mr. Blake's motion for a new trial was untimely, and thus procedurally barred, the Court need not consider Mr. Blake's motion for default judgment on his motion for a new trial. Accordingly, the Defendant's motion for a default judgment based on the Government's failure to respond within the fourteen-day period prescribed by Local Crim. R. 12.1(b) is also denied.

## V. Conclusion

For the foregoing reasons, Mr. Blake's motion for a new trial pursuant to Fed. R. Crim. P. 33 and his motion for a default judgment against the Government on his Rule 33 motion are denied.

SO ORDERED.

Dated: New York, New York
       August 5, 2011

                                          Robert P. Patterson, Jr.
                                          United States District Judge

Copies of this Order & Opinion sent to:

*Attorneys for the Defense*
**Damond Jamal Carter**
Damond J. Carter, PLLC(2nd)
Post Office Box 6365
Albany, NY 12203
(518)438-1676
Fax: (973)-672-0260

**Anthony L. Ricco**
Law Office of Anthony L. Ricco
20 Vesey Street
New York, NY 10007
(212)-791-3919
Fax: (212) 791-3940

*Attorney for the Government*
**Santosh Shankaran Aravind**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212) 637-1045
Fax: (212) 637-2937

11